Lesbia **SANTIAGO–HERNANDEZ,** et al., Plaintiffs,

v.

**PUERTO RICO DANKA, INC.,** Defendant.

No. CIV. 01–2379(RLA).

United States District Court, D. Puerto Rico.

April 4, 2005.

Edwin Gutiérrez–Torres, Esq., Bayamón, José R. Franco–Rivera, Esq., San Juan, PR, for Plaintiffs.

Alcides A. Reyes–Gilestra, Esq., San Juan, PR, for Defendant.

### *ORDER GRANTING SUMMARY JUDGMENT*

ACOSTA, District Judge.

Defendant has moved the Court to enter summary judgment on its behalf and to dismiss the federal age-related claims asserted in the complaint.[1] In her pleading plaintiff, LESBIA SANTIAGO, claims that her lay-off at age 47 was motivated by age animus in violation of the provisions of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621–634. Additionally, plaintiff alleges that defendant's failure to re-hire her after termination constituted discrimination and retaliation under ADEA.

The complaint also included local law claims under Puerto Rico's age discrimination statute, Law 100 of June 30, 1959, 29 P.R. Laws Ann. § 146 (2002), and retaliation under Law 115 of December 20, 1991, 29 P.R. Laws Ann. § 194a(a) (2002).

The Court having reviewed the memoranda submitted by the parties as well as the documentation on record finds that dismissal of the ADEA-related claims is proper. Having disposed of all the federal causes of action the supplemental claims are likewise dismissed.

### THE FACTS

Plaintiff, LESBIA SANTIAGO, commenced working for DANKA DE PUERTO RICO, INC. ("DANKA") on January 1, 1997 upon DANKA acquiring the assets of KODAK–PUERTO RICO ("KODAK"), where she was employed. MS. SANTIAGO continued performing her duties as Customer Support Representative ("CSR") with KODAK until the eventual elimination of that position on January 9, 2001.

DANKA confronted financial problems on a worldwide corporate scale by the late 1990's evidenced by a dramatic reduction in its stock price from over $50.00 per share in 1997 to a mere $.28 in December 2000.

In order to deal with this situation DANKA decided it had to become a leaner, more cost-efficient company. As part of its cost-savings measures defendant implemented a worldwide reduction in force program, i.e., a "RIF". The decision as to which positions would be eliminated was

---

1. *See* Third Amended Complaint (docket No. 19).

based on an analysis of the duties and responsibilities assigned to each and whether those functions could be assigned to already existing positions.

In Puerto Rico DANKA's goal was to reduce its workforce by approximately 20%.

In the case of plaintiff's position DANKA determined that the functions of the CSR could be performed by its salespersons who were qualified in training customers in the use of DANKA products. Hence, the CSR position was eliminated.

In January 2001, as part of the RIF program DANKA terminated 14 of its 60 local employees, including MS. SANTIAGO. Plaintiff received official notice that her position had been eliminated and paid severance benefits as well as accrued vacation and salaries.

Of the 14 employees discharged in Puerto Rico as part of the 2001 RIF only three of them—including plaintiff—were 40 years old or older.

DANKA has not hired anyone to occupy the CSR position since it was eliminated in January 2001. The duties corresponding to the CSR position were reassigned to the salespersons.

In December 2001 MS. SANTIAGO sent a copy of her resume and a cover letter to DANKA seeking employment. Defendant responded that no vacancies were available and invited plaintiff to reapply when vacancies were announced.

In May 2002 MS. SANTIAGO applied to a sales representative position advertised by DANKA in a local newspaper but was not selected. Four persons were hired to fill that position and two of them, i.e., GREGG BUNKER and GISELA LOPEZ were over 40 years old.

After the January 2001 RIF, highly qualified employees were hired and several of them were over 40 of age.

## SUMMARY JUDGMENT

Rule 56(c) Fed. R. Civ. P., which sets forth the standard for ruling on summary judgment motions, in pertinent part provides that they shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Sands v. Ridefilm Corp.*, 212 F.3d 657, 660–61 (1st Cir.2000); *Barreto–Rivera v. Medina–Vargas,* 168 F.3d 42, 45 (1st Cir.1999). The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. *De-Novellis v. Shalala,* 124 F.3d 298, 306 (1st Cir.1997). A genuine issue exists if there is sufficient evidence supporting the claimed factual disputes to require a trial. *Morris v. Gov't Dev. Bank of Puerto Rico,* 27 F.3d 746, 748 (1st Cir.1994); *LeBlanc v. Great Am. Ins. Co.,* 6 F.3d 836, 841 (1st Cir. 1993), *cert. denied,* 511 U.S. 1018, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994). A fact is material if it might affect the outcome of a lawsuit under the governing law. *Morrissey v. Boston Five Cents Sav. Bank,* 54 F.3d 27, 31 (1st Cir.1995).

In cases where the non-movant party bears the ultimate burden of proof, he must present definite and competent evidence to rebut a motion for summary judgment, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256–257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Navarro v. Pfizer Corp.,* 261 F.3d 90, 94 (1st Cir.2001); *Grant's Dairy v. Comm'r of Maine Dep't of Agric.,* 232 F.3d 8, 14 (1st Cir.2000), and cannot rely upon "conclusory allegations, improbable inferences, and unsupported

speculation". *Lopez-Carrasquillo v. Rubianes,* 230 F.3d 409, 412 (1st Cir.2000); *Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 581 (1st Cir.1994); *Medina-Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990).

## ADEA

### (1) Age Discrimination

■ The ADEA makes it "unlawful for an employer... to discharge any individual or otherwise discriminate against any individual ... because of such individual's age." 29 U.S.C. § 623(a)(1). Under the ADEA, an employer is liable if age was the motivating factor in the employer's decision. "That is, the plaintiff's age must have 'actually played a role in [the employer's decision making] process and had a determinative influence on the outcome'." *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 141, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (*citing Hazen Paper Co. v. Biggins,* 507 U.S. 604, 610, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993)). Thus, in this case, plaintiff has the burden of establishing that defendant intentionally discriminated against her based on her age. *See, Shorette v. Rite Aid of Maine, Inc.,* 155 F.3d 8, 12 (1st Cir.1998).

■ Where, as here, there is no direct evidence of discrimination, the plaintiff may prove her case through the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Rivera–Rodriguez v. Frito Lay Snacks Caribbean,* 265 F.3d 15, 25 (1st Cir.2001); *Suarez v. Pueblo Int'l, Inc.,* 229 F.3d 49, 53 (2000); *Feliciano v. El Conquistador,* 218 F.3d 1, 5 (1st Cir.2000). Under this framework, the plaintiff must prove that: (1) she was over forty (40) years of age; (2) her job performance was sufficient to meet her employer's legitimate job expectations; (3) she experienced an adverse employment action; and (4) the employer continued to need the services of the position claimant occupied. *See, De La Vega v. San Juan Star, Inc.,* 377 F.3d 111, 117 (1st Cir.2004); *Gonzalez v. El Dia, Inc.,* 304 F.3d 63, 68 n. 5 (1st Cir.2002); *Udo v. Tomes,* 54 F.3d 9, 12 (1st Cir.1995); *Goldman v. First Nat'l Bank of Boston,* 985 F.2d 1113, 1117 (1st Cir.1993).

### (2) Reductions in Force

■ In situations involving reductions in force the fourth prong of the plaintiff's prima facie case will require instead evidence "that age was not treated neutrally in implementing the RIF, or younger individuals were retained in the same position." *Ruiz v. Posadas de San Juan Assoc.,* 124 F.3d 243, 248 (1st Cir.1997). *See also, Cruz–Ramos v. Puerto Rico Sun Oil Co.,* 202 F.3d 381, 384 (1st Cir.2000) ("[evidence that] the employer retained younger persons in the same position or otherwise failed to treat age neutrally in implementing the reduction in force.") "[A] prima facie age discrimination claim does not necessarily require replacement by a younger worker. Instead, when a employer implements a reduction-in-force, the [employee] may demonstrate either that the employer did not treat age neutrally or that younger persons were retained in the same position." *Am. Airlines, Inc. v. Cardoza–Rodriguez,* 133 F.3d 111, 123 (1st Cir.1998) (citations and internal quotation marks omitted).

The fourth prong of the test differs slightly in cases stemming from reductions in force. In such situations, this prong may be satisfied by a showing that the employer, in the course of downsizing, did not treat age neutrally. *Suarez v. Pueblo Int'l, Inc.,* 229 F.3d at 54 n. 4.

### (3) Failure to Hire

■ Similarly, in ADEA failure to hire discrimination suits—absent direct evidence of age animus—a variation of the *McDonnell Douglas* analysis is also used. Hence, in these type of cases it is plaintiff's burden to establish her prima facie claim by presenting evidence that "(1) [she] is a member of a protected class, (2)[she] applied and was qualified for the position in question, (3) that despite ... her qualifications, [she] was rejected, and (4) that, after rejection, the position remained open and the employer continued to seek applicants from persons of the complainant's qualifications." *Woods v. Friction Materials, Inc.*, 30 F.3d 255, 260 (1st Cir.1994).

### (4) Pretext

■ Once plaintiff has complied with this initial prima facie burden the defendant must "articulate a legitimate nondiscriminatory reason" for the challenged conduct at which time presumption of discrimination fades and the burden then falls back on plaintiff who must then demonstrate that the proffered reason was a "pretext" and that the decision at issue was instead motivated by discriminatory animus. *Gu v. Boston Police Dept.*, 312 F.3d 6, 11 (1st Cir.2002); *Gonzalez v. El Dia, Inc.*, 304 F.3d at 69; *Zapata–Matos v. Reckitt & Colman, Inc.*, 277 F.3d 40, 44–45 (1st Cir.2002); *Feliciano v. El Conquistador*, 218 F.3d at 5; *Santiago–Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 54 (1st Cir.2000). "At this third step in the burden-shifting analysis, the *McDonnell Douglas* framework falls by the wayside because the plaintiff's burden of producing evidence to rebut the employer's stated reason for its employment action merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination." *Feli-*

*ciano v. El Conquistador*, 218 F.3d at 6 (citing *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)) (internal citations and quotation marks omitted).

The required prima-facie-case showing generates a rebuttable presumption that the defendant-employer violated the ADEA. Whereupon, the burden of production—as distinguished from the burden of proof—shifts to the defendant-employer to articulate a legitimate, nondiscriminatory basis for its adverse employment action. Once this limited burden has been met by the defendant-employer, the presumption which attended the prima facie case vanishes and the claimant must adduce sufficient creditable evidence that age was a motivating factor in the challenged employment action. The plaintiff-employee may meet her burden of proof by showing that the employer's proffered reason for the challenged employment action was pretextual, from which the factfinder in turn may, but need not, infer the alleged discriminatory animus.

*Gonzalez v. El Dia*, 304 F.3d at 68–69 (citations omitted).

"Upon the emergence of such an explanation, it falls to the plaintiff to show both that the employer's proffered reasons is a sham, and that discriminatory animus sparked its actions." *Cruz–Ramos v. Puerto Rico Sun Oil Co.*, 202 F.3d at 384 (citation and internal quotation marks omitted).

■ Defendant's "burden is one of production, not persuasion" *Reeves*, 530 U.S. at 142, 120 S.Ct. 2097, 147 L.Ed.2d 105, and "[a]t all times, the plaintiff bears the 'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff.'" *Gu v. Boston Police Dept.*, 312 F.3d at 11 (citing *Texas Dept. of Cmty. Affairs v. Burdine,*

450 U.S. at 253, 101 S.Ct. 1089). *See also, Reeves,* 530 U.S. at 143, 120 S.Ct. 2097, 147 L.Ed.2d 105.

■ The fact that the reasons proffered by the employer are discredited by plaintiff does not automatically mandate a finding of discrimination. "That is because the ultimate question is not whether the explanation was false, but whether discrimination was the **cause** of the [conduct at issue]. We have adhered to a case by case weighing. Nonetheless, disbelief of the reason may, along with the prima facie case, on appropriate facts, permit the trier of fact to conclude the employer had discriminated." *Zapata–Matos v. Reckitt & Colman, Inc.,* 277 F.3d at 45 (citations omitted) (emphasis ours); *Reeves,* 530 U.S. at 147–48, 120 S.Ct. 2097, 147 L.Ed.2d 105.

In a summary judgment context the court must determine "whether plaintiff has produced sufficient evidence that he was discriminated against due to his national origin to raise a genuine issue of material fact." *Zapata–Matos v. Reckitt & Colman, Inc.,* 277 F.3d at 45; *Rivas Rosado v. Radio Shack, Inc.,* 312 F.3d 532, 534 (1st Cir.2002). Thus, summary judgment will be denied if once the court has reviewed the evidence submitted by the parties in the light most favorable to the plaintiff it finds there is sufficient evidence from which a trier of fact could conclude that the reasons adduced for the charged conduct are pretextual and that the true motive was discriminatory. *Santiago–Ramos v. Centennial,* 217 F.3d at 57; *Rodriguez–Cuervos v. Wal–Mart Stores, Inc.,* 181 F.3d 15. 20 (1st Cir.1999).

### THE EVIDENCE

#### (1) Reduction in Force

#### (a) Prima Facie

It is uncontested that plaintiff was over 40 years old at the time she was terminated as part of a reduction in force implemented by her employer and there is no evidence that her performance up to that time was other than satisfactory. In order to complete her prima facie ADEA burden for her RIF claim plaintiff would also need to present evidence that either younger individuals were retained in her position or that age was not treated neutrally in implementing the reduction plan.

■ There is no evidence that in implementing the RIF younger individuals were retained occupying the CSR position. Plaintiff's allegation that she was substituted by LUZ CLAUDIO, a younger individual, is totally unfounded. MS. CLAUDIO was hired as a salesperson prior to the RIF. As with other salespersons, she was required to assume the responsibility of training clients previously carried out by the Customer Support Representative position occupied by plaintiff. Further, even before the RIF took place the sales representatives were already conducting trainings which officially became their full responsibility subsequent to the elimination of plaintiff's position. Thus, the CSR position—which was the only one in the local operations—was eliminated and the duties absorbed by the salespeople.

Additionally, the ages of the employees subject to the RIF do not give any indication that the plan was designed or implemented in any way with an intent to discriminate on the basis of age. A total of 14 positions out of 60 were eliminated in January 2001 as part of the Puerto Rico RIF. The vast majority of these, i.e., 11 were of employees under 40 years of age.

#### (b) Pretext

■ Assuming that plaintiff met her prima facie burden for her RIF claim her attempts at discrediting the elimination of her position as a subterfuge for age discrimination do not carry much weight.

There is ample uncontested evidence to support the RIF and the factors taken into consideration for eliminating plaintiff's position were age-neutral.

In essence, plaintiff questions the fact that DANKA had financial difficulties on a "worldwide corporate basis" and suggests that even if that was the case the fact that Puerto Rico Danka was a profitable operation should have exempted it from cost-saving measures applied across the organization. Further, she argues that the failure to implement alternate cost-reduction alternatives such as "eliminating fringe benefits, salary reduction, search for less expensive office locale, etc." rather than the reduction in force implemented should be regarded as evidence of pretextual age discrimination. Lastly, plaintiff claims that there is no admissible evidence of the factors taken into consideration for the selection of the positions to be affected by the reduction in force.

Contrary to plaintiff's allegations, we find that MR. RENTAS, as DANKA's General Manager in Puerto Rico was competent to attest to the financial situation of the enterprise during the period at issue—a fact which is confirmed by the stock value plunge contained in public records.

In his affidavit MR. RENTAS explained the reasons for the market decline as follows:

3. By the late 1990's Danka begun to experience financial problems due primarily to the highly leveraged buy-out of the Kodak imaging business in 1997 and the surplus of obsolete analog hardware in inventory. In addition, the office imaging market was rapidly changing from analog to digital platforms.

Faced with this situation "Danka determined to become a leaner, more cost-efficient and modern company" [2] which included taking cost-saving measures as well as eliminating positions across the board on a world-wide scale. "The Company's general goal was to attain a lower cost base which would help us achieve a net target profit margin of twenty percent (20%)".[3]

MR. RENTAS explained that "the RIF was a decision made by headquarters and that its implementation would affect operations world-wide." [4] Cost containment included reduction of the global workforce in addition to the implementation of other cost reduction efforts.[5] The implementation of the RIF in Puerto Rico was guided by documents and materials furnished by the regional vice-president.[6]

MR. RENTAS "was personally involved in the design and implementation of the workforce reduction and cost cutting measures enacted in Puerto Rico in late 2000 and early 2001." [7] The RIF included both terminating individuals as well as eliminating positions in various departments. Additional cost savings measures were taken including temporary hiring freeze and eliminating the company car fleet. Four additional positions were eliminated in late 2003 early 2004.

Most importantly, the CSR position had long since been cancelled in all the other DANKA operations due to cost-related factors and market changes and its duties reassigned to the sales personnel as MR. RENTAS explained in his affidavit:

---

2. Affidavit of CARLOS RENTAS ¶ 4.

3. *Id.* ¶ 10.

4. *Id.* ¶ 6.

5. Affidavit of CARLOS RENTAS ¶ 7.

6. *Id.* ¶ 9.

7. *Id.* ¶ 10.

19. The elimination of the CSR position was not exclusive to Puerto Rico. The CSR position had already been eliminated throughout most of the copier industry in the United States, and (sic) including in (sic) other companies that are Danka's competitors, such as Xerox. As part of that trend, some Danka branches in the United States had eliminated the CSR towards the end of the 1990's. At the time the RIF was implemented in Puerto Rico, to my knowledge Puerto Rico was the only Danka branch that still employed a person in the CSR position.

20. Also, the elimination of the CSR position followed Danka's change of strategic position in the market, in terms of its business focus. Danka was no longer selling only high-end equipment which required specialized training that justified the cost of a non-sales employee dedicated exclusively to training. Instead, Danka began to focus on the sale of smaller and less complex equipment, which made training a simpler and almost self-taught task. Due to the advent of new technology, customer training was now considered a value added service to be provided by sales personnel in most Danka branches.

21. As a result of the elimination of the CSR position, the job duties of Danka's sales representatives changed, in that the training functions previously performed by the CSR were to be performed by the sales representatives as a value added service to clients... The RIF meant that everybody, including the sales representatives, had to be more efficient and perform additional tasks.

▮ Just because other employees were given responsibilities previously assigned to the CSR does not imply an impermissible motive. "The mere fact that an ADEA plaintiff's duties are assumed by someone outside the protected class lacks probative value." *Cruz–Ramos v. Puerto Rico Sun Oil Co.*, 202 F.3d at 384.

Plaintiff's attempts fall short of her burden to establish pretext. In essence, she questions the wisdom of the decisions taken by her former employer in addressing its market situation by suggesting that other cost-saving mechanisms such as fringe benefits should have been applied rather than laying off employees. She further claims that there were no fiscal justifications for the local reduction because the Puerto Rico unit was not operating on a deficit.[8] Plaintiff's focus is misplaced. The court's role is not to question the business judgment of corporate defendants in managing their affairs. Rather, its function is limited to ensuring that no impermissible criteria such as age is factored into that decision.

Federal courts do not sit as a super-personnel department that reexamines an entity's business decisions. No matter how medieval a firm's practices, not matter how high-handed its decisional process, no matter how mistaken the firm's managers, the ADEA does not interfere.

*Gonzalez v. El Dia, Inc.*, 304 F.3d at 69 (citing *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359, 1365 (7th Cir.1988)) (internal quotation marks omitted). *See also, Ruiz v. Posadas de San Juan Assoc.*, 124 F.3d at 250.

**(2) Failure to Rehire**

Plaintiff also argues that DANKA's failure to rehire her for a sales position which

8. Further, even assuming plaintiff is correct in her assessment of the financial situation of Danka Puerto Rico we find no legal justification for isolating the local operations from the company's aggregate structure.

became available after her termination was motivated by her age. Assuming plaintiff met her prima facie ADEA burden on this particular claim, we find that she failed to adduce sufficient facts to indicate that the reasons proffered by DANKA for her rejection were pretextual. Plaintiff's arguments in support of this particular claim are basically that she had more experience and was qualified for the position and that MR. RENTAS' declaration is insufficient to uphold DANKA's reasoning for not having selected her.

■■■ We must begin by noting that "a claimant's personal opinion regarding his own job qualifications is not sufficiently probative on the issue of pretext." *Cruz–Ramos v. Puerto Rico Sun Oil Co.*, 202 F.3d at 385 (citation and internal quotation marks omitted).

Further, MR. RENTAS explained that after the 2001 RIF additional sales representatives were needed to address the problem of lagging sales.[9] Plaintiff applied for a sales position in response to a newspaper announcement in May of 2002. The hiring process to fill those positions was done in stages. Prior to consideration by MR. RENTAS, candidates were screened at least by the Human Resources Director and the position's immediate supervisor.

■■■ The reasons given for not selecting plaintiff—which are not in any way related to age—have not been undermined by plaintiff. In his affidavit MR. RENTAS summarized those factors as follows:

29. The hiring analysis is generally based on successful sales experience in other companies, particularly in the imaging industry. Usually the best candidate is someone who is already employed as a salesperson in the industry. Knowledge and experience with our competitors is generally deemed an asset. Recent sales experience is usually more important.

.    .    .    .    .

31. Recent sales experience and successful sales experience are preferable because usually those candidates are the ones that have established relationships with customers in the market, and can offer an opportunity of new business for Danka. In addition, recent experience in sales usually implies a close relationship with the customer base.

Based on the information on record, the qualifications of those selected as well as their recent experience and exposure to defendant's competition were superior to those of plaintiff in the specific field at issue, i.e., sales.[10] Additionally, there is evidence that plaintiff—while briefly occupying a sales representative position—indicated that she disliked sales because of the pressure of achieving quotas. Further, GREGG BUNKER and GISELA LOPEZ, two of the four persons hired for sales at that time, were over 40 years of age.[11]

Lastly, the ages of the following recruits hired after the January 2001 RIF which appear listed below further support defendant's position that age was not considered in selecting new employees be it for the position at issue or any other.[12]

| Name | Dept. | Age |
|------|-------|-----|
| GISELLA LOPEZ | sales | 45 |
| GREGG BUNKER | sales | 42 |
| JORGE SANCHEZ | sales | 41 |
| PEDRO GIUSTI | sales | 50 |
| VICTOR LOPEZ | sales | 52 |
| JAMES ROSADO | warehouse | 42 |
| CARMEN CONCEPCION | administration | 43 |

---

9. Affidavit of CARLOS RENTAS ¶ 24.

10. Affidavit of CARLOS RENTAS ¶ 34.

11. *Id.* ¶ 33.

12. *Id.* ¶ 33.

In order to adequately prove pretext on her failure to rehire claim plaintiff had to "proffer enough competent evidence to support *two* findings: 1) the employer's proffered reason was pretextual; *and* 2) its true motive was age discrimination. The burden of persuasion remains on the plaintiff employee at all times." *Ruiz v. Posadas de San Juan,* 124 F.3d at 248 (citations omitted). A plaintiff "must do more than cast doubt on the rationale proffered by the employer". *Ruiz v. Posadas de San Juan,* 124 F.3d at 248. "[T]he 'evidence must be of such strength and quality as to permit a reasonable finding that the... [non-selection] was *obviously or manifestly unsupported.*'" *Ruiz v. Posadas de San Juan,* 124 F.3d at 248 (citing *Brown v. Trustees of Boston Univ.,* 891 F.2d 337, 346 (1st Cir.1989)).

Based on the evidence on record we can safely conclude that there is no indication that the reasons proffered by DANKA for not selecting plaintiff for the sales positions that were opened after her termination were pretextual.

### (3) Retaliation

Plaintiff also included a retaliation claim in this case. According to the pleading defendant failed to re-employ her "for retaliatory animus in violation of ADEA for her filing a charge of discrimination before the Anti Discrimination United and the EEOC and filing the instant complaint." Third Amended Complaint ¶ 7.1.

When only circumstantial evidence of discriminatory retaliation is available the *McDonnell Douglas* burden-shifting analysis is also utilized. Hence, in this case, "plaintiff must make a prima facie showing of retaliation by presenting evidence that (1) he engaged in protected conduct, (2) he was thereafter subjected to an adverse employment action, and (3) a causal connection existed between the protected conduct and the adverse action."

*Che v. Mass. Bay Transp. Auth.,* 342 F.3d 31, 38 (1st Cir.2003); *Benoit v. Technical Mfg. Corp.,* 331 F.3d 166, 175 (1st Cir. 2003); *Gu v. Boston Police Dept.,* 312 F.3d at 6. "Once a prima facie case has been presented... an inference of discrimination arises. The employer is then required to offer a non-discriminatory reason for the employment action in question." *Che,* 342 F.3d at 39 (citations omitted).

Apart from her conclusory allegation in the complaint plaintiff has failed to present any evidence of retaliation in support of this cause of action. However, even assuming plaintiff has met her prima facie burden of reprisal, justifications advanced by management for its decision not to select her for the sales position—which have gone uncontested—appear reasonable and well-founded and in no way motivated either by plaintiff's age or in reprisal for her previous discrimination claims. As previously indicated, the candidates selected—two of which also fell within the protected age group—had more suitable sales experience for the position in question.

Plaintiff failed to present evidence that the proffered reasons were pretextual. *Che,* 342 F.3d at 39. There is no evidence on record from which a reasonable jury could find that plaintiff's non-selection was a pretext for retaliating against her for having instituted administrative and/or judicial age discrimination proceedings.

### (4) Conclusion

The fact that subjective considerations are crucial to a discrimination claim will not preclude the use of summary judgment. "Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Munoz v. R.J. Reynolds Tobacco*

*Co.,* 896 F.2d at 8. *See also, Cruz–Ramos v. Puerto Rico Sun Oil Co.,* 202 F.3d at 385 (arguments lacking support will not defeat a summary judgment properly grounded on evidence).

■ Apart from advancing unsupported and speculative arguments plaintiff has failed to undermine the business reasons adduced by DANKA for its RIF and for eliminating the CSR position as part of the company's "world-wide workforce reduction and reengineering program, with the purpose of cutting costs and capitalizing on new market demands."[13] It is important to keep in mind that "'[t]he ADEA does not stop a company from discharging an employee for any reason (fair or unfair) or for no reason, so long as the decision to fire does not stem from the person's age.'" *Cruz–Ramos v. Puerto Rico Sun Oil Co.,* 202 F.3d at 386 (citing *Mesnick v. Gen. Elec. Co.,* 950 F.2d 816, 825 (1st Cir.1991)).

Likewise, the record amply supports DANKA's grounds for selecting other salespersons over plaintiff which in no way can be ascribed to either plaintiff's age or her filing of discrimination charges.

Faced with defendant's properly documented motion for summary judgment we find that dismissal of the ADEA claims is warranted.

### SUPPLEMENTAL JURISDICTION

■ The Court having dismissed plaintiff's federal claims it may, in its discretion, decline to entertain the state-based actions under its supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c). *Gonzalez–De-Blasini v. Family Dept.,* 377 F.3d 81, 89 (1st Cir.2004).

Accordingly, the supplemental claims asserted by plaintiff LESBIA SANTIAGO HERNANDEZ and her daughter VALERIE COLON SANTIAGO are hereby **DISMISSED WITHOUT PREJUDICE.**

### CONCLUSION

Based on the foregoing, DANKA's Motion for Summary Judgment (docket No. 65) is **GRANTED.**[14]

Accordingly, the ADEA claims asserted by LESBIA SANTIAGO HERNANDEZ based on her termination, failure to rehire and retaliation are hereby **DISMISSED WITH PREJUDICE.**

It is further ORDERED that the supplemental claims asserted by plaintiff LESBIA SANTIAGO HERNANDEZ and her daughter VALERIE COLON SANTIAGO are hereby **DISMISSED WITHOUT PREJUDICE.**

Judgment shall be entered accordingly.

IT IS SO ORDERED.

### *JUDGMENT*

The Court having disposed of defendant's motion for summary judgment through its Order issued on this date, it is hereby

ORDERED AND ADJUDGED that the ADEA claims asserted by LESBIA SANTIAGO HERNANDEZ based on her termination, failure to rehire and retaliation are hereby **DISMISSED WITH PREJUDICE.**

It is further ORDERED AND ADJUDGED that the supplemental claims asserted by plaintiff LESBIA SANTIAGO HERNANDEZ and her daughter VAL-

---

**13.** Affidavit of CARLOS RENTAS ¶ 4.

**14.** *See also,* DANKA's Statement of Proposed Uncontested Facts (docket No. **66**); plaintiffs' Opposition (docket No. **70**) and Memorandum

of Law (docket No. **71**); DANKA's Reply (docket No. **81**) and plaintiffs' Sur–Reply (docket No. **89**).

ERIE COLON SANTIAGO are hereby **DISMISSED WITHOUT PREJUDICE.**

IT IS SO ORDERED.